Jennifer McDANIEL, personal representative of the Estate of James McDaniel, Appellant–Plaintiff,

v.

BUSINESS INVESTMENT GROUP, LTD., d/b/a ACME Plumbing and Drain Service, Appellee–Defendant.

No. 49A04–9804–CV–202.

Court of Appeals of Indiana.

April 14, 1999.

David W. Stone IV, Anderson, Indiana, Stephen P. Eckert, Eckert Eckert & Craven, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey S. Zipes, Coots, Henke & Wheeler, Carmel, Indiana, Attorney for Appellee.

**OPINION·**

RILEY, Judge

*STATEMENT OF THE CASE*

Plaintiff–Appellant Jennifer McDaniel, as personal representative of the Estate of James McDaniel ("the Estate"), appeals the trial court's grant of summary judgment in favor of Acme Plumbing and Drain Service ("Acme") in a negligence action filed against Acme in connection with the death of James McDaniel ("McDaniel"), an employee of Wilson Water and Sewer Company ("Wilson").

We affirm.

*ISSUES*

The Estate presents multiple issues, which we consolidate and restate as:

1. Whether the relationship between Wilson and Acme was one of referral or contractee/independent contractor.

2. Whether·Acme can be held liable for negligence in the death of McDaniel in that trenching is intrinsically dangerous or likely to cause injury unless due precaution is taken.

3. Whether Acme can be held liable for negligence for failing to employ a competent and careful contractor.

## FACTS AND PROCEDURAL HISTORY

In November, 1995, Mr. and Mrs. Shepard ("Shepards") contacted Acme about a damaged sewer line on their property. Pursuant to an oral contract between Acme and Wilson, Acme contacted Wilson and the latter's employees went to the Shepards' house and prepared a job proposal on Acme's bid form. The Shepards accepted and signed the proposal and Wilson's employees began work on the sewer line. While Wilson employee McDaniel was working in a 9 foot deep trench, the sides of the trench caved in. McDaniel was killed in the accident. Wilson's employees had not taken any safety precautions, such as using shoring boxes, to prevent a cave-in.

The agreement between Acme and Wilson called for Acme to contact Wilson when an Acme customer needed underground plumbing work completed. Wilson would then contact the customer and present him with an estimate. Wilson used Acme's contract forms in such jobs, but Wilson's employees would perform the work without any direction or supervision by Acme. At the completion of the job, the customer would give Wilson a check made payable to Acme for the total amount due. Acme would then pay Wilson 80% of the total fee.

Following McDaniel's death, the Estate brought a claim against Acme for negligence. Acme moved for summary judgment on the grounds that it owed no duty to McDaniel. The trial court granted Acme's motion, and the Estate now brings this appeal.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1139 (Ind.Ct.App.1995). Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there are no genuine issues as to any material fact and that the moving party is entitled

to a judgment as a matter of law. *Id.* at 1139–40; Ind.Trial Rule 56(C). We construe the pleadings and designated materials in a light most favorable to the non-movant, giving careful scrutiny to ensure that the losing party is not improperly denied its day in court. *Thomas v. State,* 698 N.E.2d 320, 322 (Ind.Ct.App.1998), *trans. denied.*

Specific findings and conclusions entered by the trial court when ruling on motions for summary judgment merely afford the appellant an opportunity to address the merits of the trial court's rationale. *Dague,* 647 N.E.2d at 1140. The specific findings and conclusions also aid in our review by providing us with a statement of reasons for the trial court's actions, but they have no other purpose. *Id.* Rather than relying upon the trial court's findings and conclusions, we must base our decision upon the T.R. 56(C) materials properly presented to the trial court. *Id.*

### I. Relationship of the Parties

The complaint in this case alleges that Acme owed McDaniel certain duties to ensure his safety at the work site, and that Acme's breach of those duties proximately caused McDaniel's death. The negligence cause of action, in which this case is couched, is comprised of three elements: 1) a duty on the part of the defendant to conform his conduct to the standard of care arising from his relationship with the plaintiff; 2) the defendant's failure to conform to the requisite standard of care; and 3) injury to the plaintiff that was proximately caused by the breach. *Thomas,* 698 N.E.2d at 322. Summary judgment is rarely appropriate in negligence actions. *Id.* Nevertheless, one is entitled to judgment as a matter of law when undisputed material facts negate at least one element of a plaintiff's claim. *Id.* Here, Acme argues that it owed no duty to McDaniel and therefore cannot be held liable for negligence.

In the context of construction contracts, into which category the present case falls, the extent of a prime contractor's liability for injuries sustained by another contractor's employee depends in part on the rela-

tionship between the two contractors. Much of the confusion in this case centers around the parties' attempts to define the relationship between Acme and Wilson. The trial court found that the relationship was merely one of referral in that when prospective clients contacted Acme, Acme would refer them to Wilson and in return, Wilson would pay Acme a commission fee. Of course, under this characterization, Acme's relationship to Wilson would be too tenuous to impose on Acme a duty to ensure the safety of Wilson's employees. The Estate argues, however, and the undisputed facts indicate, that the relationship between Acme and Wilson was more than that of referral and should more properly be characterized as contractee/independent contractor.

When the Shepards contacted Acme to correct the sewer line break, Acme, pursuant to an oral contract between Acme and Wilson, turned the job over to Wilson. Acme did not simply refer the Shepards to Wilson with a suggestion that the Shepards give Wilson a call; rather, Acme contacted Wilson, who in turn contacted the Shepards. The Shepards were presented with and signed an Acme contract form, and, had Wilson been able to complete the job, the Shepards would have written a check payable to Acme—in effect paying Acme—who would have then paid Wilson its portion. Furthermore, when the job was interrupted by McDaniel's accident, it was Acme who ensured that the job would be completed, and Acme who ultimately accepted responsibility for the Shepards' satisfaction. We find these factors support the Estate's contention that the relationship between Acme and Wilson was that of contractee/independent contractor rather than merely a referral.[1]

## II. Contractee Liability for Negligence of an Independent Contractor

 Generally, a contractee is not liable for the negligence of an independent contractor. *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 586 (Ind.1995). A duty will be imposed, however, if one of five exceptions to the general rule of contractee nonliability exists. *Id.* Those exceptions are: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.* These exceptions create non-delegable duties on the part of one hiring an independent contractor. *Id.* at 587. The Estate argues that exceptions (1) and (4) apply to the trenching in which McDaniel was engaged at the time of his death.

This court discussed the application of these two exceptions to trenching in *Cummings v. Hoosier Marine Properties, Inc.*, 173 Ind.App. 372, 363 N.E.2d 1266 (1977). In that case, we held that trenching is not intrinsically dangerous, nor is it probable that trenching will cause injury to others unless due precaution is taken. The Estate urges us in the present case to revisit that discussion in light of statistics which reveal a disturbing number of injuries and deaths connected with trenching.

### A. Exception One: Intrinsically Dangerous Work

 Under the first exception, a contractee may be held liable for the negligence of an independent contractor where the work to be performed is intrinsically dangerous. Work is intrinsically dangerous if the danger exists in the doing of the activity regardless of the method used. *Cummings*, 363 N.E.2d at 1275. The risk is intrinsic to the accomplishment of the task and not simply a danger arising from a casual or collateral negligence of others. *Id.* Trenching does not fall into this category. Although it can be dangerous, the use of proper procedures, such as those published by OSHA and other organizations, renders the work relatively safe.

1. Generally independent contractor status is discussed in contrast to an employer/employee, or master/servant relationship, under which a general contractor can be held vicariously liable for the torts of an employee subcontractor which result in injuries to the subcontractor's employees. In the present case, however, neither party argues that such a relationship is present, and although we consequently do not discuss the question in depth, we note here that the record would not support such a finding.

Wilson owner Harold Wilson testified in his deposition that the use of a shoring box on the Shepard job would have prevented the cave-in. The risk in the present case developed only because Wilson's employees failed to comply with accepted safety procedures. Their failure to use a shoring box was collateral to the risk created by digging the trenches, and therefore no liability can attach to Acme under the "intrinsically dangerous" exception.

### B. Exception Four: Due Precaution

Under the fourth exception, a contractee may be held liable for the negligence of an independent contractor where the work to be performed will probably cause injury to others unless due precaution is taken. "The essence of this exception is the foreseeability of the peculiar risk involved in the work and of the need for special precautions." *Bagley*, 658 N.E.2d at 588. As this court explained in *Red Roof Inns, Inc. v. Purvis*, 691 N.E.2d 1341 (Ind.Ct.App.1998), *trans. denied*, "liability is established only when, at the time of contracting, the employer should have foreseen that injury to others was 'likely to happen.'" *Id.* at 1345–46.

A compilation of the evolving case law in this area leads to the conclusion that application of this exception requires several elements, including a peculiar risk; the contractee's foreseeability of that risk; and an injury consistent with the peculiar risk. *See Cummings*, 363 N.E.2d at 1275; *Bagley*, 658 N.E.2d at 584; *Red Roof Inns*, 691 N.E.2d at 1345–46. In addition, courts have cautioned against allowing the exception to swallow the general rule of nonliability. *See, Jones v. Indianapolis Power and Light Co.*, 158 Ind. App. 676, 691, 304 N.E.2d 337, 346 (1973); *Red Roof Inns*, 691 N.E.2d at 1346.

In the case before us, the Estate argues that trenching involves a peculiar risk of cave-ins and related injuries. Statistics showing a dismaying number of injuries and deaths connected with trenching and cave-ins were introduced to support the Estate's contention. Although "peculiar risk" has not been defined previously, we now hold that the phrase refers to the risk of a particularized harm specific to the work being performed or the conditions under which it is performed. Moreover, the exception applies only when the risk involved is something more than the routine and predictable hazards generally associated with a given occupation: it must be a risk unique to the circumstances of a given job. Finally, the actual injury sustained must result from the particularized harm identified by the risk. *See Red Roof Inns*, 691 N.E.2d 1341; *Bagley*, 658 N.E.2d 584.

Using this standard, we find that cave-ins do not represent a peculiar risk of trenching. The relevant statistics demonstrate that cave-ins are a routine and predictable hazard of trenching, and even the construction industry has acknowledged that reality by devising and promoting safety measures to prevent such accidents. Had Wilson's employees utilized those safety measures, the cave-in and McDaniel's death could have been avoided. There is no evidence that the Shepard job involved a risk of cave-in that was somehow unique or distinguishable from the general risk of cave-ins associated with trenching, nor is there evidence that extraordinary precautions were necessary and should have been taken. Under the circumstances, Acme cannot be held liable for the accident that caused McDaniel's death. In so holding, we acknowledge the importance of the public policy behind the exceptions to contractee nonliability, i.e., that the responsibilities created by the exceptions are deemed so important to the community that the contractee should not be permitted to transfer these duties to another. *Bagley*, 658 N.E.2d at 587. We also remember, however, that the relationship under discussion is that of contractee/independent contractor, not employer/employee. Nonliability is the general rule precisely because in such relationships the contractee by definition does not control the manner or the means by which the independent contractor's job is done. The due precaution exception contemplates that independent contractors will be held responsible for anticipating and guarding against routine or predictable dangers. To find otherwise would be to abrogate not only the general rule of nonliability but also the contractee/independent contractor relationship itself.

In addition to a peculiar risk, foreseeability is an essential element of the due precaution exception. *Red Roof Inns*, 691 N.E.2d at 1345. The contractee of an independent contractor may always anticipate that if the contractor is negligent toward third persons, some harm to those persons may result. *Id.* at 1346. More than the *possibility* of harm, however, is required; a plaintiff must show a *probability* of such harm. *Id.* In the present case, the activity involved was trenching and the harm was the cave-in and McDaniel's resultant death, and the Estate again points to the relevant statistics to show that Acme should have foreseen the probability of a cave-in. As we stated above, the use of proper procedures minimizes any dangers associated with trenching. A contractee may reasonably expect that an independent contractor will follow recommended procedures to ensure the safety of its workers.

Even if we had found that a peculiar risk of cave-in existed on the Shepard job, there is no evidence to suggest that Acme was aware of an unusually unsafe or dangerous condition at the time the sewer trenches were contracted for, such that Acme should have foreseen a problem. Acme never inspected the progress of the work, nor did it have knowledge of the proper procedures to be used in trenching. Finally, nothing in the designated evidence before us supports the conclusion that Acme should have foreseen the probability that Wilson's employees would not use recommended procedures and a cave-in and McDaniel's death would result. *See Red Roof Inns*, 691 N.E.2d 1341. We find, therefore, that while the statistics presented by the Estate's expert are sobering and certainly suggest a need for great vigilance on the part of trenching companies to ensure that proper procedures are implemented and utilized, they are insufficient to invoke an exception to the general rule of contractee nonliability.

**2.** We reject the Estate's argument that if Acme had checked it would have known of Wilson's safety violations and therefore constructive knowledge should be imputed to Acme. Such a requirement would place an unreasonable burden on general contractors to be the watchdogs of independent contractors, often in industries in which the general contractors do not have the necessary knowledge and expertise. As stated above, it is reasonable for a contractee to expect that an independent contractor will follow the recommended procedures of its industry.

### III. Negligent Hiring

The Estate also claims that Acme was negligent in failing to hire a competent and careful contractor. In support of this claim, the Estate asserts that Wilson had previously been cited for safety violations and therefore Acme should have foreseen the probability that Wilson's employees would not use proper procedures and an accident would result. This argument fails for two reasons. First, there is no evidence that Acme knew that Wilson had a record of past violations.[2] And second, our supreme court has rejected negligent hiring as a distinct cause of action. *Bagley*, 658 N.E.2d at 587. Rather, a contractee may be subject to liability for negligently failing to employ a competent and careful independent contractor only when one of the five exceptions to the rule of contractee nonliability is applicable. *Id.* Having found that none of the exceptions apply in this case, we now find that Acme cannot be held liable for failing to employ a competent and careful contractor.

### *CONCLUSION*

Although the trial court erred in characterizing the relationship between Acme and Wilson as a referral relationship rather than a contractee/independent contractor relationship, the court correctly determined that Acme cannot be held liable for the death of Wilson's employee, McDaniel.

Affirmed.

STATON, J., and BROOK, J., concur.