Cynthia E. SOAMES, Appellant– Plaintiff,

v.

YOUNG OIL COMPANY and Thomas A. Young d/b/a Young Oil Company, Appellees–Defendants.

No. 52A02–9912–CV–878.

Court of Appeals of Indiana.

Aug. 8, 2000.

Scott R. Leisz, Jennifer F. Perry, McHale, Cook & Welch, P.C., Indianapolis, Indiana, Attorneys for Appellant.

John M. McCabe, Worman, Dixon & Manis, P.L.C., Lansing, Michigan, Attorney for Appellees.

## OPINION

BAKER, Judge

Appellant-plaintiff Cynthia Soames appeals an order denying her summary judgment on her breach of contract claim and granting summary judgment to appellees-defendants Young Oil Company and Thomas Young d/b/a Young Oil Company (collectively, Young). Specifically, Soames claims that the existence of a disputed material fact, whether Young Oil began producing oil before the contractual deadline, precluded the entry of summary judgment for Young. On the other hand, Soames contends that she was entitled to summary judgment because Young had failed to make royalty payments.

## FACTS

Soames owns 136.5 acres of land in Miami County, Indiana with 28 oil wells located thereon.[1] On April 8, 1997, Soames and Young entered into an Oil and Gas Lease. The lease was modified in writing on April 21, 1997. As modified, the lease provided that Young would drill for oil on Soames' land and pay Soames ⅛ of the proceeds realized from the sale of the oil, but that Young would pay Soames the sum of $10,000 or rescind the lease if Young did not "begin producing the lease" by April 21, 1998. Record at 10–16. Soames received a lease payment of $136.50 ($1.00 per acre) upon commencement of the lease but did not receive additional payments from Young.[2]

On November 20, 1998, Soames filed her Complaint, which alleged that Young had breached the terms of the lease contract by failing to produce oil, rescind the lease or pay Soames the sum of $10,000.00. On December 28, 1998, Young answered Soames' complaint and counterclaimed for $40,492.32 "in the event the Oil and Gas Lease is deemed invalid." R. at 34. Soames and Young filed respective motions for summary judgment and a hearing on the motions was held on November 3, 1999. The trial court granted summary judgment to Young and denied summary judgment to Soames. The order included *sua sponte* provisions for the monthly payment of $270.00 from Young to Soames (to be credited against future royalties) and a prohibition against contact between Soames and Young. Young's counterclaim was not addressed. Soames now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ In reviewing the trial court's grant of summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind.Ct.App.1997), *trans. denied.* Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *City of Elkhart v. Agenda: Open Government, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct.App. 1997), *trans. denied.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

■ If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party and reverse the entry of summary judgment. *McGee v. Bonaventura*, 605 N.E.2d 792, 793 (Ind.Ct.App.1993). A fact is material for summary judgment purposes if its resolution is decisive of either the action or a relevant secondary issue. *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.*, 590 N.E.2d 1067, 1072 (Ind.Ct.App.1992). A factual issue is genuine if those matters properly considered under T.R. 56 evidence a factual dispute requiring the trier of fact to resolve

---

1. The record does not disclose the identity of the entity responsible for the initial well-digging but it is apparent that the 28 wells existed prior to the instant lease.

2. Soames averred in her second Affidavit in Support of Summary Judgment that she received a check of an unspecified amount from Mid Ohio Crude, attributable to oil produced under prior leases and stored on Soames' premises.

the opposing parties' different versions. *Id.*

## II. Soames' Claims

■ Soames argues the existence of a material issue of fact precluding summary judgment for Young, specifically, whether Young "began producing the lease" prior to the contractual deadline of April 21, 1998. She then inconsistently claims that this same disputed factual issue does not preclude summary judgment in her favor. Soames argues that "produce" is synonymous with "produce in a paying quantity" and because she received no payment for any new production of oil on her land, she is entitled to judgment as a matter of law. Young contends that he satisfied his obligation to "begin producing the lease" by producing oil irrespective of the amount of oil or the timeliness of royalties payments.

To resolve this appeal, our initial task must be to determine what constitutes "begin producing the lease." We are not persuaded by either party's argument in this regard. Specifically, with respect to Soames' assertion, we observe that while "produce" may be synonymous with "produce in paying quantity," we are not confronted with that issue in the instant case. Rather, our task is to interpret the phrase "begin producing the lease." Moreover, we find Young's interpretation too zealous, as the amount of oil produced is clearly a relevant inquiry and just because some oil was produced does not mean that he complied with the clear intention of the parties to the contract.

■ We observe that as a contract, a lease should be governed by the general contract principles of good faith and commercial reasonableness. *First Federal Sav. Bank of Indiana v. Key Markets, Inc.,* 559 N.E.2d 600, 603 (Ind.1990) (citing *Fernandez v. Vazquez,* 397 So.2d 1171, 1173–74 (Fla.Ct.App.1981)). It is the well-settled duty of courts to interpret a contract so as to ascertain the intent of the parties. *Id.*

■ It is axiomatic that the reasonable expectations of the parties to a commercial lease may differ substantially from the expectations of parties to a non-commercial lease. A party "begins to produce" under a commercial lease when that which is commercially reasonable is accomplished. This does not necessarily include either payment of proceeds to the landlord within a reasonable time after extraction or the use of best efforts to market petroleum. *Cf. Wilson v. Elliott,* 589 N.E.2d 259, 264–65 (Ind.Ct.App.1992) (finding that production or operations for oil and gas do not necessarily include either payment of proceeds to the landlord within a reasonable time or the use of best efforts to market petroleum). While the parties to an oil lease would quite reasonably expect the production of more oil than is necessary to stain one's shoes, beyond that limited amount, what is commercially reasonable production for 136.5 acres is a factual inquiry.

Here, the trial court essentially recognized the necessity of factual inquiry to resolve the parties' dispute. At the hearing held on November 3, 1999, the following exchange took place:

> Court: How can I find that there's no genuine issue of material fact when we don't agree on whether or not oil was even produced? And if there is oil in the tanks, it may have been oil that was there before the production, and we don't know whether there's oil in the tanks.

> Young's counsel: Your Honor, because of this, of the statements of two, we have two affidavits saying that there was oil but the statements of plaintiff herself, it says she saw the wells and they're capable of production. If the wells are producing, are going up and down, and they're capable of production, what else could be, what else could happen?

> Court: Does, does a derrick going up and down necessarily mean that the well is producing? I don't know.

Soames: No.

R. at 208–9.[3]

Moreover, the evidentiary materials that were properly designated to the trial court reflect the existence of a factual dispute as to the amount of oil actually produced. These evidentiary materials include the pleadings and the affidavits of Soames, Thomas Young and drilling subcontractor Larry Daugherty. Young and Daugherty each averred that a well designated Soames # 1 produced 40 – 45 barrels of oil between March 16, 1998 and April 21, 1998, while Soames averred that Young never drilled a new oil well on her property and did not commence to drill before April 21, 1998. Soames also averred that she examined the oil tanks on her property on October 13, 1999 and found each tank empty with the exception of one tank that contained only sludge in the bottom. The trier of fact was thus presented with opposing versions of a material fact.

The sparse evidentiary materials designated to the trial court do not demonstrate the absence of a genuine issue of material fact or Young's entitlement to summary judgment as a matter of law. Moreover, Soames' argument that she is entitled to summary judgment notwithstanding the disputed issue of the amount of oil produced is unavailing. While payment for production is commercially reasonable and clearly contemplated by the parties to the lease contract herein, the undisputed lack of royalty payments is not probative of whether Young failed to begin producing the lease prior to the contractual deadline.[4]

*CONCLUSION*

In light of our resolution of the foregoing issue, we conclude that summary judgment is not appropriate. Accordingly, the trial court's denial of summary judgment to Soames is affirmed and the trial court's grant of summary judgment to Young is reversed.

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

RILEY, J., and KIRSCH, J., concur.

---

**3.** We note the trial court acquiesced to the following request by Young's counsel: "Your Honor, and we would ask, we'd all go out there and take a look. Maybe we could resolve this pretty quick and see if there is oil in the tank." R. at 206. The inspection resulted in the filing of an additional affidavit of Thomas Young dated November 12, 1999. R. at 173–74. Young averred that, on November 4, 1999, the parties and their attorneys inspected a 210–barrel oil tank located on Soames' property and found that the tank contained approximately 75 barrels of oil. The affidavit was filed but not designated to the trial court in support of the motion for summary judgment. Nevertheless, this information is not dispositive of whether the oil was produced prior to April 21, 1998.

**4.** We note that the contract did not require the payment of royalties immediately upon extraction of oil and it is not the province of this court to add such a provision.