Jerry R. MERRILL, Jr.,
Appellant–Plaintiff,

v.

KNAUF FIBER GLASS GmbH,
Appellee–Defendant.

No. 73A01–0111–CV–435.

Court of Appeals of Indiana.

July 29, 2002.

1260

C. Dennis Wegner, C. Dennis Wegner & Assoc., P.C., Indianapolis, IN, Attorney for Appellant.

Stanley C. Fickle, William E. Padgett, William A. Hahn, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Ellerman Roofing employee Jerry R. Merrill, Jr. (Merrill) filed a negligence action against Knauf Fiber Glass GmbH (Knauf) for injuries sustained after Merrill fell through a skylight while repairing Knauf's roof. This appeal involves the trial court's grant of Knauf's motion to strike part of an affidavit, its grant of Knauf's motion for summary judgment, and its denial of Merrill's cross-motion for partial summary judgment. We find that the trial court did not abuse its discretion by striking inadmissible legal conclusions from the affidavit of Merrill's expert witness. Because we further conclude that Knauf was not legally responsible under any theory raised, we affirm the trial court's rulings on the summary judgment motions.

### Facts and Procedural History

Knauf discovered that the roofs on buildings known as "Warehouse C" and "Warehouse D" at its Shelbyville plant needed repairs. In particular, the rubber-like membranes in valleys between the various peaks on the roofs leaked water. Ellerman Roofing had previously worked for Knauf, and Lewis Craig, Knauf's buildings and grounds supervisor, contacted Ellerman Roofing about performing the necessary repairs.

Owner Doug Ellerman physically inspected the roofs with Craig, who pointed out that both roofs had flat fiberglass skylights located a distance above the mem-

branes. Craig showed Ellerman that the skylights on Warehouse D had metal mesh covers, but the skylights on Warehouse C did not. He reported that, years earlier, a Knauf employee had fallen through an uncovered skylight on another building.

Ellerman Roofing submitted a bid and was awarded the job. Knauf executed a Purchase Order which provided that Ellerman Roofing would "furnish all labor, supervision, materials, tools, machinery, equipment, appliances, shoring, scaffolding, false work, transportation, and all other facilities necessary to perform" the work. Appellant's App. p. 344. The Purchase Order also incorporated and attached a two-page Standard Articles for Fixed Price Construction Contract and referenced a 50–page Safety Rules and Procedures for Outside Contractors. At some point, Doug Ellerman, as Safety Representative for Ellerman Roofing, signed an Outside Contractor Acknowledgement Form.

Before beginning the project, Ellerman Roofing supervisor Larry Isgrigg and Merrill's brother, Doug, also an Ellerman Roofing employee, had a brief "safety meeting" with Craig. During a subsequent "walk through," Craig showed the men the uncovered skylights on Warehouse C. Craig told them that a Knauf employee previously had fallen through a skylight, and he advised Ellerman Roofing employees to avoid them while they performed the repairs. At the commencement of the work, Craig again reminded the employees to stay away from the skylights.

On March 25, 1999, Merrill joined the project, working first on Warehouse D and then transferring to Warehouse C. On the afternoon of March 30, Merrill walked up the roof to get his tools. Merrill knew that the uncovered skylights on Warehouse C were unsafe. On his way back to the worksite, however, Merrill was distracted by a co-worker, and he stepped onto a skylight, fell through it, and landed on the floor approximately 15 feet below.

Merrill filed a complaint against Knauf, alleging negligence. Knauf moved for summary judgment, arguing that it was not liable under any theory. Merrill filed a cross-motion for partial summary judgment on the issue of duty. Merrill designated the affidavit of Frank L. Burg, a "Certified Safety Professional," who attested that, *inter alia,* Knauf had an affirmative duty under the Occupational Health and Safety Act (OSHA) and construction industry standards to cover or guard the skylights. Appellant's App. p. 390, 392. Knauf moved to strike Burg's expert opinion testimony.

Following a hearing, the trial court decided that one paragraph of Burg's affidavit rested upon an inadmissible legal conclusion and, thus, struck that paragraph. Additionally, the court concluded that Knauf had no "heightened duty" to place covers or guards over the skylights "pursuant to OSHA." Appellant's App. p. 6. The court further determined that Knauf assumed no such duty by contract or conduct, that Knauf's duty of care as a landowner was discharged by warning Ellerman Roofing about the skylights, and that Merrill was aware of and appreciated the risks associated with the skylights. Accordingly, the court granted Knauf's motion for summary judgment and denied Merrill's cross-motion for partial summary judgment. This appeal ensued.[1]

## Discussion and Decision

Merrill challenges the court's decisions to strike a portion of Burg's affidavit, to grant summary judgment in favor of Knauf, and to deny his own cross-motion

---

1. We heard oral argument on June 25, 2002.

for partial summary judgment. We first examine the evidentiary issue.

### I. *Motion to Strike Affidavit*

 Merrill claims that the trial court improperly excluded evidence from consideration in the summary judgment proceedings. The decision to admit or exclude proffered expert testimony is entrusted to the discretion of the trial court. *Indianapolis Podiatry, P.C. v. Efroymson*, 720 N.E.2d 376, 383 (Ind.Ct.App.1999), *trans. denied.* This court will reverse a decision to exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the trial court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Wallace v. Meadow Acres Manufactured Hous., Inc.*, 730 N.E.2d 809, 812 (Ind.Ct. App.2000), *trans. denied.*

At issue is the following paragraph of Burg's affidavit:

5. Based upon my review of the documentation provided to me, I have the following professional opinions:

(a) The uncovered skylights on the roof where Jerry Merrill fell constituted a hazardous condition on Knauf's premises which was unreasonably dangerous to business invitees and to Knauf's own employees.

(b) Knauf had an affirmative duty under applicable OSHA and construction industry standards to cover or guard the skylights for the protection of its own employees and for the protection of Ellerman's employees who were present at Knauf's invitation pursuant to a contract between Knauf and Ellerman which was drafted by Knauf.

(c) Knauf violated OSHA standards and the customs and practices within the construction industry and Knauf's own safety program when it failed to guard or cover skylight openings on the roof where Jerry Merrill fell.

(d) Skylights are required to be guarded and/or covered because it is well known that workers can be distracted or focused on their tasks and can inadvertently step on a skylight. Knowing the location of a skylight or other hole or being warned about such danger is not an acceptable safeguard according to the standards or the customs and practices within the construction industry.

Appellant's App. p. 392.

In order to be used in a summary judgment proceeding, an affidavit must set forth such facts as would be admissible in evidence. Ind. Trial Rule 56(E); *Rubin v. Johnson*, 550 N.E.2d 324, 327 (Ind.Ct.App. 1990), *trans. denied.* Here, the trial court found that Burg's expert opinions set forth in Paragraph 5 "are comprised of, and/or necessarily depend upon" the legal conclusion that Knauf had an affirmative duty to cover or guard the skylights. Appellant's App. p. 7. In essence, the court found Burg's opinions inadmissible under Indiana Evidence Rule 704(b), which proscribes opinion testimony concerning legal conclusions.

 "The question of whether a duty to exercise care arises is governed by the relationship of the parties and is an issue of law within the province of the court." *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind.1990); *Interim Healthcare of Fort Wayne, Inc. v. Moyer ex rel. Moyer*, 746 N.E.2d 429, 433 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Accordingly, we have held that an expert witness was not permitted to testify that the defendant was responsible for a defective condition and owed the plaintiffs a duty. *Harman v. C.E. & M, Inc.*, 493 N.E.2d 1319, 1321 (Ind.Ct. App.1986), *reh'g denied, trans. denied.*

In his affidavit, Burg concludes that Knauf owed Merrill an affirmative duty to cover or guard the skylights. Burg's de-

termination regarding duty is a legal conclusion that invades the province of the court. Given that Paragraph 5 relies upon inadmissible evidence, the trial court did not abuse its discretion when it struck that portion of Burg's affidavit.

## II. Motion and Cross–Motion for Summary Judgment

Merrill also claims error in the grant of summary judgment in favor of Knauf and the denial of his cross-motion for partial summary judgment. In reviewing the trial court's rulings, this court faces the same issues that were before the trial court and follows the same process. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001). We do not weigh evidence but, instead, liberally construe the facts in the light most favorable to the nonmoving party. *Hendrickson v. Alcoa Fuels, Inc.*, 735 N.E.2d 804, 811 (Ind.Ct.App.2000). Summary judgment is appropriate only when the designated evidence demonstrates that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Soames v. Young Oil Co.*, 732 N.E.2d 1236, 1238 (Ind.Ct.App.2000).

The party appealing the summary judgment rulings has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Cobb*, 754 N.E.2d at 908. On appeal, we determine whether there is a genuine issue of material fact and whether the trial court correctly applied the law. *Soames*, 732 N.E.2d at 1238. We will affirm the grant of summary judgment on any legal basis supported by the designated evidence. *Cole v. Lantis Corp.*, 714 N.E.2d 194, 198 (Ind.Ct.App.1999).

The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Nor is our review changed by the trial court's entry of findings of fact and conclusions thereon. *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1166 (Ind.Ct.App. 1998), *trans. denied.* Although the findings and conclusions provide valuable insight into the court's decision, they are not binding upon this court. *Id.*

Here, Merrill advances several theories of liability. Specifically, he claims that Knauf, as a landowner, was liable to him as a business invitee, that Knauf owed him a non-delegable duty, and that Knauf assumed a duty of care by contract and by conduct. Merrill's claims sound in negligence, which is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a breach of duty, that is, a failure on the part of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure. *Douglass*, 549 N.E.2d at 369. Summary judgment is rarely appropriate in a negligence action; however, when the undisputed material facts negate at least one element of a claim, judgment as a matter of law is appropriate. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 937 (Ind.Ct. App.1996).

### A. Liability to Business Invitee

Merrill first asserts liability under the theory that a landowner owes a business invitee a duty of care. Generally, the owner of property has no duty to furnish the employees of an independent contractor a safe place to work in the broad sense as the phrase is applied to an employer. *Howard v. H.J. Ricks Constr. Co.*, 509 N.E.2d 201, 205 (Ind.Ct.App. 1987), *reh'g denied, trans. denied.* Howev-

er, the owner is under a duty to keep the property in a reasonably safe condition for business invitees, including employees of independent contractors. *Zawacki v. U.S.X.*, 750 N.E.2d 410, 414 (Ind.Ct.App. 2001), *reh'g denied, trans. denied.* The "best definition" of that duty comes from the Restatement (Second) of Torts § 343 (1965), which provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind.1991), *reh'g denied.* Under § 343, "An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein." Restatement (Second) of Torts § 343, cmt. d.

Read in conjunction with § 343, § 343A provides in part that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Ozinga Transp. Sys., Inc. v. Mich. Ash Sales, Inc.*, 676 N.E.2d 379, 385 (Ind.Ct.App.1997) (citing Restatement (Second) of Torts § 343A), *reh'g denied, trans. denied.* The word "known" means knowledge of the existence of the condition or activity itself

and also appreciation of the danger it involves. Restatement (Second) of Torts § 343A, cmt. b.

Under the Restatement view, a landowner is subject to liability if: (1) the landowner knows or should know of a danger and should realize it involves an unreasonable risk; (2) should expect that invitees will not realize the danger or will not protect themselves against such; and (3) fails to exercise reasonable care. Here, Knauf knew that the skylights might not bear the weight of a man and, to the extent it believed the invitees would not realize that danger, it repeatedly warned Ellerman Roofing about the risks involved. The warnings to Merrill's superiors were warnings to Merrill, "the employment relation permitting a reasonable assumption that such notice will be communicated in the ordinary course to all employees on the work." *Howard*, 509 N.E.2d at 205–06. In fact, Merrill admitted that he knew the skylights were dangerous and that he typically was cautious around them.

Thus, Knauf is liable for Merrill's injuries only if Knauf should have anticipated that Merrill would fail to protect himself despite his knowledge and if, despite such, Knauf failed to exercise reasonable care to protect Merrill. In analyzing that issue, we consider the purpose and intent of the invitation, *id.* at 205, and the comparative knowledge of the parties. *Zawacki*, 750 N.E.2d at 414; *Davis v. Hoosier Energy Rural Elec. Coop., Inc.*, 19 F.3d 365, 369 (7th Cir.1994) (applying Indiana law).

The undisputed facts are that Knauf hired Ellerman Roofing, a professional roofing company, to perform the necessary repairs. Ellerman Roofing was in control of the manner by which the roof was repaired and the resources used in the project. That includes control over the activities of its employees at the time of the incident. Although Merrill urges that El-

lerman Roofing controlled the valleys only, it is of no legal consequence that Ellerman Roofing was hired only to repair the valleys. Both Knauf and Ellerman Roofing anticipated that the roofers would access areas around the skylights during the repair project.

Additionally, Merrill knew of the skylights on the roof and their attendant dangers and had already avoided at least one skylight while walking on the roof. Despite his knowledge and appreciation of the risks, Merrill proceeded down the roof, was distracted, and fell into a skylight. Knauf could not have anticipated such events given the circumstances surrounding the invitation and the comparable knowledge of the parties. *See Zawacki,* 750 N.E.2d at 415–16 (affirming summary judgment where independent contractor was in control of both the site and its employees and landowner's comparative knowledge was no greater than that of the injured employee); *Ozinga,* 676 N.E.2d at 386 (holding there was no triable issue regarding landowner's breach of duty where the plaintiff was aware of the slippery nature of fly ash on which he fell and where the landowner could not have informed plaintiff of any facts of which he was not already aware); *Davis,* 19 F.3d at 369 (finding no landowner liability for physical harm caused by failure of independent contractor's employee to protect himself from known dangers). Under the foregoing authority, Knauf is not liable for Merrill's injuries.

Still, Merrill asks this court to adopt and apply what the parties term a "distraction theory." In particular, Merrill claims that Knauf should have expected that he would become distracted and fall through the skylight. Relevant to that issue are the following comments to § 343A of the Restatement:

e. In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so....

f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

*Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it....* In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk.... It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

Restatement (Second) of Torts § 343A, cmts. e, f (emphasis added).

Contrary to Merrill's position, the distraction doctrine is not a separate theory of liability. Rather, the doctrine states that, in the proper case, a landowner may anticipate that a known or obvious danger will cause harm to the invitee when, for example, there is reason to expect that the invitee's attention may be distracted. In this case, however, the parties have designated no facts that compel us to apply that doctrine.

The undisputed facts reveal that the source of the distraction was an Ellerman Roofing employee. Ellerman Roofing, not Knauf, controlled that employee. Knauf did not instruct on how to repair the roof or where to place tools. Rather, Knauf hired skilled laborers and could reasonably anticipate that Merrill "would be circumspect and would take measures to protect himself." *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1425–27 (7th Cir.1992) (applying Illinois law and concluding that the landowner had no liability under the doctrine), *reh'g denied.*

The evidence does not support a reasonable inference that Knauf should have anticipated that another Ellerman Roofing employee would distract Merrill and that Merrill would step onto and fall through a skylight. Because there is no triable issue of fact regarding Knauf's liability as a landowner to an invitee, the trial court properly granted Knauf's summary judgment motion on that theory.

### B. Non–Delegable Duty

■ Merrill also claims that Knauf was vicariously liable for Ellerman Roofing's negligence because Knauf owed him a non-delegable duty. The well-established general rule is that a principal is not liable for the negligence of an independent contractor. *Hale v. R.R. Donnelley & Sons*, 729 N.E.2d 1025, 1027 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* Five excep-tions to the general rule have been recognized: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.* Duties associated with the five exceptions are considered non-delegable, and the principal is liable for the negligence of the contractor because the responsibilities are deemed "so important to the community" that the principal should not be permitted to transfer those duties to another. *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 587 (Ind.1995) (citation omitted).

■ Merrill argues that the fourth exception applies here. Our supreme court explained that "[t]he exception applies where, at the time of the making of the contract, a principal should have foreseen that the performance of the work or the conditions under which it was to be performed would, absent precautionary measures, probably cause injury." *Id.* at 588 (citations omitted). The danger that the principal must foresee must be substantially similar to the accident that produced the injury. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 857 (Ind.1999). This court has explained that more than the *possibility* of harm is required; the defendant should have foreseen the *probability* of such harm. *Red Roof Inns, Inc. v. Purvis*, 691 N.E.2d 1341, 1346 (Ind.Ct.App.1998), *trans. denied.*

Applying those principles, we concluded that the landowner did not owe a non-delegable duty to the employee of an independent contractor who fell from a motel roof being repaired by his employer. *Id.* at 1347. Later, on similar facts, we held the

fourth exception inapplicable where an employee of a general contractor, hired to replace the landowner's roof, fell through a cut section of the roofing. *Ryobi Die Casting v. Montgomery*, 705 N.E.2d 227, 230 (Ind.Ct.App.1999), *trans. denied.*·

Merrill points out that a Knauf employee had fallen through the skylight some years earlier. However, Knauf had warned about the attendant dangers. Ellerman Roofing controlled the methods by which the repairs were accomplished. The fourth exception contemplates that Ellerman Roofing, as an independent contractor, would be held responsible for anticipating and guarding against predictable dangers. *McDaniel v. Bus. Inv. Group, Ltd.*, 709 N.E.2d 17, 22 (Ind.Ct.App.1999), *trans. denied.* "To find otherwise would be to abrogate not only the general rule of nonliability but also the contractee/independent contractor relationship itself." *Id.*

As stated previously, at the time of contracting Knauf could not have foreseen that, if it failed to cover or guard the skylights, it was likely that a roofer would walk down the roof after retrieving tools, get distracted, and fall though a skylight. As a matter of law, we hold that the fourth exception does not establish the existence of a non-delegable duty. Summary judgment in favor of Knauf on that theory of liability is appropriate.

### C. *Assumption of Duty by Contract*

Next, Merrill claims that Knauf bound itself by contract to place covers or guards over the skylights of Warehouse C. In interpreting a written contract, it is the court's duty to ascertain the intent of the parties at the time the contract was executed as disclosed by the language used to express their rights and duties. *Teitge v. Remy Constr. Co.*, 526 N.E.2d 1008, 1010–11 (Ind.Ct.App.1988). To determine whether a party is charged with a duty of care under a contract, we look to the contract as a whole by examining all of its provisions. *Hale*, 729 N.E.2d at 1028.[2] We accept an interpretation of the contract that harmonizes its provisions. *Teitge*, 526 N.E.2d at 1010. If a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty. *Hale*, 729 N.E.2d at 1028.

The contract between Knauf and Ellerman Roofing for Warehouse C involves four documents: (1) the Purchase Order; (2) the two-page Standard Articles for Fixed Price Construction Contract; (3) the 50–page Safety Rules and Procedures for Outside Contractors [hereinafter Safety Rules]; and (4) the Outside Contractor Acknowledgement Form.[3] Merrill concedes that no provision in those documents expressly requires Knauf to cover or guard the skylights. In large, he relies upon the Purchase Order, which reads in relevant part:

> Subject to the terms, conditions, and special provisions contained herein, inclusive of those on attachments hereto which become a part hereof, the contractor shall, unless otherwise specified herein, furnish all labor, supervision, materials, tools, machinery, equipment, appliances, shoring, scaffolding, false work, transportation, and all other facili-

---

2. In *Hale*, our court examined the contract issue under the second exception to the general rule of principal nonliability discussed in Issue II–B, *supra.*

3. Merrill argues that we should not consider the Outside Contractor Acknowledgement Form because Doug Ellerman was unsure whether the undated designated form relates to the present roofing job or to a previous one. However, Ellerman attested that he would have signed the same form before performing any job for Knauf. Thus, we regard the document as part of the agreement.

ties necessary to perform the above scope of work....

. . . .

3. Technical cognizance hereof shall be the responsibility of Owner's Lew Craig or his designee. *Said technical representative will be responsible for assuring Contractor['s] strict compliance with Owner's Safety Rules and Procedures for Outside Contractors.*

. . . .

6. Such work shall be in accordance with oral directions of Owner's technical representative named herein. Contractor understands and agrees to follow Knauf Fiber Glass Corporate Safety Rules and Procedures for Outside Contractors....

Appellant's App. p. 344–45 (emphasis added).

Merrill insists that Paragraph 3 requires Knauf to assure that Ellerman Roofing strictly complied with all OSHA safety regulations, which he interprets as requiring Knauf to cover or guard the skylights. Paragraph 3, however, speaks only of the Knauf's promulgated house rules, not OSHA promulgated regulations.

 Merrill attempts to circumvent the plain language of the agreement by claiming that the Safety Rules incorporate all applicable OSHA regulations.[4] He cites 29 C.F.R. § 1926.501(b)(4)(ii), which states, "Each employee on a walking/working surface shall be protected from tripping in or stepping into or through holes (including skylights) by covers." *See also* 29 C.F.R. § 1926.501(b)(4)(i) ("Each employee on walking/working surfaces shall be protected from falling through holes (including skylights) more than 6 feet (1.8

m) above lower levels, by personal fall arrest systems, covers, or guardrail systems erected around such holes.").

Our review of the lengthy Safety Rules shows that they do not mention skylights. The Safety Rules do provide that the outside contractor is responsible "for studying all of the OSHA Safety & Health Regulations for General Industry and Construction and observing such regulations as applicable." Appellant's App. 171–72. Additionally, the outside contractor must supply all fall protection equipment.

In the Safety Rules, Knauf agrees generally to "take all reasonable steps to make the workplace a safe place for its Outside Contractors." Appellant's App. p. 173. However, intent is not determined from one sentence. The Purchase Order specifically makes Ellerman Roofing responsible for supervision during the project. Under the Standard Articles for Fixed Price Construction Contract, the contractor acknowledges that it has made all examinations it deems necessary to determine the hazards incidental to the work. That document further states that the contractor shall perform the work in accordance with OSHA standards. In the Outside Contractor Acknowledgement Form, Doug Ellerman agreed that, as the Safety Representative for Ellerman Roofing, he had studied all OSHA regulations for construction and would observe applicable regulations on Knauf's jobsite.

As the above indicates, Ellerman Roofing, not Knauf, was required to observe applicable OSHA regulations. Our courts have refused to extend a specific duty to

---

4. In this section regarding assumption of duty by contract, Merrill interjects an additional argument that OSHA required Knauf, as an employer, to place covers over the skylights. Knauf was not Merrill's employer, however, and Merrill cannot use OSHA regulations to

expand Knauf's duty to him. *Ramon v. Glenroy Constr. Co.*, 609 N.E.2d 1123, 1129 (Ind. Ct.App.1993), *trans. denied; Merritt v. Bethlehem Steel Corp.*, 875 F.2d 603, 608 (7th Cir. 1989) (applying Indiana law).

an owner where the contract merely prescribes safety rules and requires the independent contractor to observe those rules or any laws relating to safety. *Ryobi*, 705 N.E.2d at 231; *Adams v. Inland Steel Co.*, 611 N.E.2d 141, 144 (Ind.Ct.App.1993), *trans. denied.*

Considering the contract as a whole, as we must, we find that the agreement does not evince an affirmative intent to know applicable OSHA safety regulations and to assure Ellerman Roofing's compliance with each. Accordingly, Knauf was not contractually bound to place covers or guards over the skylights. Knauf was entitled to summary judgment on that issue.

### D. Assumption of Duty by Conduct

In a final argument, Merrill asserts that, by its actions, Knauf assumed a duty for the safety of Ellerman Roofing employees. A duty of care may arise where a party gratuitously or voluntarily assumes a duty by conduct. *Plan–Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind.Ct.App.1983). "The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 975 (Ind.1999) (quoting *Plan–Tec*, 443 N.E.2d at 1219). The existence and extent of such a duty are ordinarily questions for the trier of fact. *Johnson*, 712 N.E.2d at 975. However, the court will decide the issue as a matter of law when the record contains insufficient evidence to establish such a duty. *Id.*

The designated evidence shows that, before the job, Craig discussed safety measures with Ellerman Roofing's president. Craig also had a brief "safety meeting" and a "walk-through" with two Ellerman Roofing employees. Toward the beginning of work, Craig reminded Ellerman Roofing employees about the skylights. There is a factual dispute regarding whether Craig inspected the roofs during performance of the repair. The evidence most favorable to Merrill indicates that Craig "came around once in a while" during the time the men were working on Warehouse D and that Merrill's brother had seen Craig on Warehouse C at some point before Merrill's fall.

Merrill likens the facts of this case to *Phillips v. United Engineers & Constructors, Inc.*, 500 N.E.2d 1265 (Ind.Ct.App. 1986), and to *Perry v. Northern Indiana Public Service Co.*, 433 N.E.2d 44 (Ind.Ct. App.1982). In *Phillips*, a contractor's employee was fatally injured when he fell from an elevated catwalk where he had been installing sheet metal siding. The construction manager hired by the landowner had a safety coordinator who held bi-weekly safety meetings for superintendents of the contractors. He also conducted tours of the jobsite during which he noted safety violations or unsafe practices, and then wrote a "speed letter" advising the violator to remedy the problem. *Phillips*, 500 N.E.2d at 1269. The safety coordinator admitted that a portion of his responsibility was to "govern the safety of contractors." *Id.* We concluded that this evidence was sufficient to present a jury question regarding whether the construction manager had assumed a duty for the overall safety aspects of the project. *Id.*

In *Perry*, an employee of a sub-contractor fell while attempting to weld a fan housing approximately 20 feet above the ground without scaffolding or other safety apparatus. During the project, the property owner held regular safety meetings for employees of sub-contractors, had from "6 to 25 to 30 safety men" at the site who had "jurisdiction" of the safety program, and employed a "Safety Supervisor" to whom the injured employee had complained prior to his fall. *Perry*, 433 N.E.2d at 49–50. In reversing the grant

of summary judgment in favor of the defendant, we held that there was a factual dispute regarding the defendant's assumption of a duty to the injured employee. *Id.* at 50.

Knauf directs us to *Teitge v. Remy Construction Co.*, 526 N.E.2d 1008 (Ind.Ct. App.1988). There, the employee of a prime contractor was injured when he fell through an unguarded skylight as he was walking backward, dragging a piece of metal across the roof. The employee claimed the architect, had voluntarily assumed a duty to protect the safety of all employees on the construction site. The architect's project administrator and supervisor conducted on-site progress and coordination meetings every two weeks as well as daily on-site inspections to verify compliance with the contract and to coordinate the work. On two occasions, the supervisor had instructed employees to observe certain obvious safety practices. In affirming the trial court's entry of judgment on the evidence in favor of the architect, we held there was insufficient evidence to present a jury question on whether the architect had assumed a duty to the employee. *Id.* at 1015.

We find the case at bar more similar to *Teitge* than to *Phillips* and *Perry*. Although Knauf reviewed house rules on safety with Ellerman Roofing before the project, it did not hire a safety director for the roofing project and did not conduct regular safety meetings during the project. Knauf merely reminded the workers to avoid the skylights and may have occasionally visited the site during the repairs. Knauf did not exercise the level of activity that would constitute "a deliberate attempt to control or actively supervise safety at the job site." *Robinson v. Kinnick*, 548 N.E.2d 1167, 1169 (Ind.Ct.App.1989), *reh'g denied, trans. denied.* Accordingly, no legal duty arose by virtue of Knauf's affirmative acts. Summary judgment for Knauf was properly entered on this issue.

### Conclusion

We conclude that Knauf was not liable to Merrill as a business invitee and that Knauf had no non-delegable duty to provide for Merrill's safety. The undisputed facts also show that Knauf did not assume such a duty by contract or conduct. Because Knauf has shown that Merrill cannot recover on any theory raised, summary judgment in favor of Knauf and against Merrill is appropriate.

Affirmed.

BAKER and RILEY, JJ., concur.