Amy M. RHODES and Janet Gurtz, As Co–Personal Representatives of the Estate of Dwaine D. Gurtz, Deceased, Appellants–Plaintiffs,

v.

Mark D. WRIGHT, Stacey Wright, Chris E. Wright, Julie Wright, Alan Wright and Judy Wright, d/b/a Wright Brothers Farm, Appellees–Defendants.

No. 88A05–0302–CV–64.

Court of Appeals of Indiana.

June 26, 2003.

Patrick D. Murphy, Boveri Murphy Rice Ryan & LaDue, South Bend, IN, Attorney for Appellant.

James E. Bourne, Wyatt, Tarrant & Combs, New Albany, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Amy M. Rhodes and Janet Gurtz as the co-personal representatives of the Estate of Dwaine D. Gurtz (the Estate) appeal the trial court's grant of summary judgment in favor of appellees-defendants Wright Brothers Farm (the Farm), Mark D. Wright, Stacy Wright, Chris E. Wright, Julie Wright, Alan Wright, and Judy Wright (collectively, the Wrights). Specifically, the Estate contends that the Wrights were liable for the conditions on the Farm when Dwaine was struck and killed by a forklift. Concluding that the Wrights' duty to maintain their property in a reasonably safe manner did not include providing exterior lighting or other alleged "safety features" proffered by the Estate, we affirm the trial court's grant of summary judgment.

## FACTS

The Wrights own the Farm and are in the business of raising chickens. In December 1999, the Wrights entered into a contract with Tyson Foods, Inc. (Tyson), an independent contractor. The contract specified Tyson's responsibilities, which included owning the chickens, supplying their feed, and gathering them for processing. The contract also specifically detailed the Wrights' duties, which included providing the facility, the labor, and the utilities used to raise the chickens. Appellants' App. p. 125. The relevant portion of the Farm consists of six chicken houses, with the area west of the first chicken house maintained by the Wrights as the driveway and loading area. Both the chicken houses and area surrounding the houses were built in accordance with Tyson regulations, which did not require exterior lighting. Appellants' App. p. 61–62.

When Tyson agents collect chickens, a specific procedure is followed in accordance with the contract. First, Tyson sends notice of their impending visit approximately three days before the chicken collection. Then, upon Tyson's arrival, a representative of the Farm and the "catching foreman" walk through the house to remove the dead birds. This is the Wrights' *only* responsibility during the catching procedure per the contract. Finally, the lights inside the chicken house are turned off, to avoid scaring the chickens, and the catching commences. The actual catching and loading process is Tyson's responsibility as defined by the contract:

> [Tyson] or its designee *at its sole discretion* shall have the right to schedule the broilers for processing. [Tyson] will no-

tify the [Farm] of the scheduled time for pick-up as soon as practicable. *[Tyson] shall catch, load and transport the broilers to a place designated by [Tyson] at no cost to the [Farm].*

Appellants' App. p. 70. (emphases added).

The Farm received written notice on February 9, 2001, that representatives from Tyson would arrive on the premises and catch chickens on February 13, 2001. Appellants' App. p. 168–70. On February 13, 2001, Mark Wright, the only Farm representative present, met Tyson's crew supervisor Steve Tindall at 3:00 a.m. to begin the collection.

Before loading, the Tyson forklift operator, Michael Berry, completed a pre-operation check of the Tyson forklift and reported to Tindall that the four backup lights and backup alarm did not work. Appellants' App. p. 42–43. In response, Tindall taped glow sticks to the back of the forklift. Appellants' App. p. 141. On that occasion, Tindall and Wright did not walk through the chicken houses. Rather, the men waited in Tindall's truck for Tyson's crew to complete the job.

At the time of the accident, two Tyson trucks were parked along the left side of the first chicken house. Berry individually carried empty cages into the chicken house which were filled by Tyson employees and subsequently loaded into the truck. With the full cages, Berry backed out the front door of the first chicken house, turned the rear of the forklift to align himself with the truck, then pulled forward to load the cage onto the truck parked to the left of the front door.

After five cages were loaded onto the truck, Gurtz, a Tyson truck driver, parked his truck to the right of the first chicken house. Gurtz exited his truck and prepared it for loading. As Berry exited the chicken house in reverse for the sixth time, he struck Gurtz, crushing him to death against Gurtz's own truck.

On February 28, 2002, in its second amended complaint, the Estate asserted a claim of negligence against the Wrights as owners of the Farm. Specifically, the Estate claimed that the Wrights failed to illuminate the area around the chicken houses and maintain the forklift in a manner that would have protected Gurtz from the injuries that befell him. The Wrights moved for summary judgment, claiming they were entitled to a judgment as a matter of law because illumination and maintenance of machinery were Tyson's responsibilities and the Wrights otherwise fulfilled their duty to maintain the Farm in a reasonably safe manner for business invitees. Following a hearing on the motion, summary judgment was entered for the Wrights on January 7, 2003. The Estate now appeals.

## DISCUSSION AND DECISION

The Estate contends that the trial court erroneously entered summary judgment for the Wrights because they did not maintain the Farm in a reasonably safe manner for business-invitees. In addressing this contention, we first note that summary judgment shall be granted if the designated evidence demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). On appeal from summary judgment, an appellate court faces the same issues that were before the trial court and follows the same process. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001). The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* Further, all doubts as to the existence of material issues of fact must be resolved

against the nonmoving party. *Id.* This court will affirm an order granting summary judgment on any legal basis supported by the designated evidence. *Merrill v. Knauf,* 771 N.E.2d 1258, 1264 (Ind. Ct.App.2002), *trans. denied.*

The sole issue is whether the Wrights' duty to maintain reasonably safe conditions on the Farm for business invitees included providing exterior illumination and other "safety features." It is undisputed that in his capacity as a Tyson employee, Gurtz was the Wrights' business invitee. *See Burrell v. Meads,* 569 N.E.2d 637, 642 (Ind.1991) (adopting the business invitee rule from Restatement (Second) of Torts § 332 (1965)). In general, a landowner has no duty to furnish a safe workplace to an independent contractor, but there is a responsibility to keep the property in a reasonably safe condition. *Merrill,* 771 N.E.2d at 1264. Furthermore, the landowner's duty to maintain a reasonably safe condition extends to employees of an independent contractor. *Id.* According to the Restatement:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965); *Burrell,* 569 N.E.2d at 639–40. Section 343 is to be read in conjunction with Section 343(A) which provides in part that "[a] possessor of land is *not* liable to his invitees for *physical harm* caused to them by any activity or condition on the land whose danger is *known or obvious to them,* unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343(A) (1965) (emphasis added).

In applying the Restatement and *Burrell* to the facts here, the Wrights have a duty to maintain the Farm in a reasonably safe condition, yet that duty does not extend to obvious harm. The record shows that it was extremely dark on the morning of February 13, 2001, when the Tyson representatives met at the Farm. Under the contract, it was Tyson, and not the Wrights, that had all illumination responsibilities directly related to chicken catching. The very task of catching chickens is expedited by darkness so as not to "spook" the chickens, as both parties testified. Appellants' App. p. 131, 174, 177, 178, 180, 202, 245. Furthermore, the record indicates that it was *Tyson* who required the lights to be off during the catching. Appellants' App. p. 174, 180, 245. Consequently, the responsibility for any lighting deficiency should rest with Tyson. Moreover, we note that the accident took place at 3:00 a.m. under dark, foggy conditions. All those present on the Farm that morning knew that visibility was reduced. There were no complaints about lighting on any prior occasions and the Tyson crew manager, who bore the responsibility to maintain machinery used in the chicken catching process, knew of the forklift's mechanical defects. Essentially, neither the Farm nor the Wrights had any responsibility for the forklift's maintenance.

Even so, the Estate urges that the absence of other purported safety features may have caused Gurtz's death, including the Wright's failure to post signs indicating where drivers were to park in relation to the loading area as well as their failure to direct traffic in the unlit loading area.

Appellants' Reply Br. p. 2. While any one of these actions might have prevented this particular incident from occurring, none were intrinsic to the Wrights' duty to maintain a reasonably safe premises. In essence, the contract ultimately defined the Wrights' duties as chicken producers when they engaged with Tyson representatives.

Under these circumstances, we must conclude that Tyson controlled the chicken catching procedure pursuant to the terms of the contract and the Wrights' duty to maintain the property in a reasonably safe manner did not extend to providing exterior lighting or alternative safety measures. Thus, no breach of duty occurred and we find that summary judgment was appropriately entered for the Wrights.

Judgment affirmed.

SULLIVAN, J., and DARDEN, J., concur.