Filed 12/21/23 Regwan v. Abbot Laboratories CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JUDY REGWAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ABBOTT LABORATORIES, INC., <br><br> Defendant and Respondent. | B319606 <br><br> (Los Angeles County Super. Ct. No. BC711263) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Daniel M. Crowley, Judge. Affirmed.

Joseph Farzam Law Firm, Joseph F. Farzam; Law Office of Ted W. Pelletier and Ted W. Pelletier for Plaintiff and Appellant.

Winston & Strawn, Andrew E. Tauber, Alexander H. Cote; Mayer Brown, Daniel L. Ring and Joseph J. Vescera for Defendant and Respondent.

_____

Judy Regwan (Regwan) appeals from a judgment of dismissal after the trial court sustained, without leave to amend, the demurrer of Abbott Laboratories, Inc. (Abbott) to Regwan's first amended complaint. Regwan's lawsuit stemmed from serious injuries she suffered during the implantation of a medical device manufactured by Abbott. Reviewing de novo, we conclude Regwan's negligence claim against Abbott is expressly preempted by federal law. We affirm the judgment of dismissal.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

In 2017, Regwan underwent cardiac surgery to implant a MitraClip to repair a damaged heart valve. The device was made and sold by Abbott. The implantation procedure requires the continuous flow of intravenous saline to the heart. During Regwan's procedure, the saline bag ran dry, causing her to suffer an air embolism and serious brain injury.

### II. Procedural Background

#### A. Original Complaint

In 2018, Regwan sued the hospital, the surgeon, other physicians, and Does 1-100 for medical malpractice. Two years later, Regwan added Abbott as Doe 1 by a form amendment, thereby asserting a medical malpractice claim against Abbott based on the surgeon's alleged negligence.

#### B. First Amended Complaint

In February 2020, Regwan filed a first amended complaint for medical malpractice, this time against the hospital and the surgeon alone. Regwan added negligence and products liability causes of action against Abbott after learning that an Abbott representative attended the surgery and was "responsible for the flow of saline."

### C.    Demurrer

Abbott demurred to the first amended complaint, arguing it was time-barred, failed to allege facts sufficient to state any cause of action, and was preempted by federal law.

Regwan failed to timely and substantively oppose the demurrer.  Her position was the demurrer was mooted by the filing of a second amended complaint.

At the hearing, the trial court rejected Regwan's argument because no second amended complaint had been filed and, in any event, its filing would have been untimely at this late date.  The court then sustained the demurrer without leave to amend, finding Regwan's negligence and products liability causes of action against Abbott failed as a matter of state law.  The court also ruled the products liability cause of action was preempted by federal law.  The court did not reach Abbott's argument that Regwan's negligence cause of action was federally preempted.  The court dismissed the first amended complaint against Abbott and entered a judgment of dismissal.  Regwan timely filed this appeal.

### DISCUSSION

Regwan's sole contention on appeal is the judgment of dismissal should be reversed as to her negligence cause of action against Abbott.[1]  We disagree, concluding the claim is federally preempted.[2]

---

[1] Regwan is expressly not challenging the trial court's ruling on her products liability cause of action.

[2] We thus do not reach Regwan's additional contention the trial court erred in finding her first amended complaint failed to allege sufficient facts to state a cause of action.

3

Preliminarily, we note medical device representatives, like Abbott's, have been attending device-dependent procedures for some years. This is particularly true of orthopedic, trauma, and cardiovascular surgeries. These days, as baby boomers age and advances in medical technologies rapidly increase, medical device representatives may have greater knowledge about their products than the doctors who implant them. Consequently, medical device representatives are more frequently in the operating room at the surgeons' behest to provide advice and technical support about their product and/or its implantation. This practice can expose the medical device manufacturer and its representative to liability. (See Jacxsens et al., *Medical Device Law: Beyond the Basics: Expanding Theories of Liability and Defenses for Claims Involving Medical Device Sales Representatives* (Jan. 2013) 39 William Mitchell L.Rev. 1087, 1088–1090, and cases cited therein.)

## I.     Demurrer and Standard of Review

In assessing whether a demurrer was properly sustained, we independently ask " 'whether the [operative] complaint states facts sufficient to constitute a cause of action.' " (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100, quoting *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; see also *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230 [de novo review].) In answering this question, we " 'assume the truth of the complaint's properly pleaded or implied factual allegations.' " (*Loeffler*, at p. 1100, quoting *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

## II.     Forfeiture

At the outset, Abbott maintains Regwan has forfeited her contention that Abbott is liable under the negligent-undertaking

4

theory because she failed to oppose the demurrer on this ground. We reject Abbott's argument. As the legal sufficiency of a proposed amended complaint is a question of law reviewable de novo (*Lee v. Hanley*, *supra*, 61 Cal.4th at p. 1230), and the complaint is invulnerable to a general demurrer if, on any theory, it states a cause of action (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38), forfeiture is inapplicable here. (See *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1491–1492.)

## III.    Federal Preemption

Abbott argues that, even if Regwan's state law claim is not forfeited, it is nonetheless preempted by the Medical Device Amendments of 1976 (21 U.S.C. § 360c et seq.) (MDA).

### A.    The MDA and Class III Medical Devices

In 1976, the MDA amended the Food, Drug, and Cosmetic Act to require "detailed federal oversight" of medical devices. (*Riegel v. Medtronic, Inc.* (2008) 552 U.S. 312, 316 [128 S.Ct. 999, 169 L.Ed.2d 892] (*Riegel*).) The most intense level of scrutiny is reserved for Class III medical devices because they pose the greatest risk of injury or illness. (*Id.* at p. 317.) A Class III medical device must undergo a "rigorous" premarket approval process (*ibid.*) to "provide reasonable assurance of its safety and effectiveness." (21 U.S.C. § 360c(a)(1)(C)(i)(II).) The MitraClip is a Class III medical device.

The premarket approval process for a Class III medical device requires the device manufacturer to submit an application that presents all available scientific knowledge concerning investigations into the device's safety and effectiveness; detailed information regarding its design, components, ingredients, properties, and principles of operation; a full description of

5

manufacturing methods and facilities; any applicable performance standards; samples of the device; specimens of proposed labeling; and other information deemed relevant by the Food and Drug Administration (FDA).  (21 U.S.C. § 360e(c)(1).)  Once the application has been approved, the manufacturer is prohibited from manufacturing, packaging, storing, labeling, distributing, or advertising the device in a manner inconsistent with any conditions to approval specified in the premarket approval order for the device.  (21 C.F.R. § 814.80 (2023).)  Moreover, before making any changes that may affect the safety or effectiveness of an approved device, the manufacturer must generally submit a supplemental request for FDA review and approval.  (21 C.F.R. 814.39 (2023).)

> **B.  The MDA's Express Preemption Provision and *Riegel***

Federal preemption is rooted in the Supremacy Clause of the Constitution, which states the law of the United States "shall be the Supreme Law of the Land."  (U.S. Const., art. VI, cl. 2.)  State laws are expressly preempted under the Supremacy Clause when Congress defines "the extent to which its enactments preempt state law."  (*English v. General Electric Co.* (1990) 496 U.S. 72, 78 [110 S.Ct. 2270, 110 L.Ed.2d 65].)  Abbott posits express preemption applies here.

The MDA contains an express preemption provision in which Congress has decreed that "no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—[¶] (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and [¶] (2) which relates to the safety or effectiveness of the device or to any other

6

matter included in a requirement applicable to the device under this chapter." (21 U.S.C. § 360k(a).) The term "any [state] requirement" is intended to encompass common law duties as well as duties created by statutory law. (*Riegel*, *supra*, 552 U.S. at p. 324; accord, *Quishenberry v. UnitedHealthcare, Inc.* (2023) 14 Cal.5th 1057, 1067–1068; *Roberts v. United Healthcare Services, Inc.* (2016) 2 Cal.App.5th 132, 145.)

With this preemptive provision, Congress established a centralized regulatory scheme. In other words, because different or additional state-law requirements are expressly preempted, medical device manufacturers face only one standard of care, which is the federal standard of care. Manufacturers are thus not subjected to a multitude of differing regulations that could discourage innovation or drive potentially beneficial devices from the market. (See *Riegel*, *supra*, 552 U.S. at p. 326 [inferring the preemption provision indicates "the solicitude for those injured by FDA-approved devices . . . was overcome in Congress's estimation by solicitude for those who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States"].)

*Riegel*, *supra*, 552 U.S. 312 is the most recent and fundamental decision concerning the issue of express preemption in MDA-related litigation. The *Riegel* court devised a two-step analysis to determine whether state law claims are expressly preempted in medical device cases: First, has the FDA "established requirements applicable to" the particular device? (*Id.* at p. 321.) Second, would the state law claims impose "requirements with respect to the device that are 'different from, or in addition to,' " the federal requirements, and that relate to either (i) " 'safety or effectiveness,' " or (ii) " 'any other matter included in a requirement applicable to the device' " under the

7

MDA?  (*Id.* at pp. 321–323.)  If the answer to both steps of the analysis is "yes," then the state law claims are expressly preempted.  (*Riegel*, *supra*, 552 U.S. at pp. 321–322, 329.)  This analysis has been recognized by California courts.  (See *Glennnen v. Allergan, Inc.* (2016) 247 Cal.App.4th 1, 10; *Coleman v. Medtronic, Inc.* (2014) 223 Cal.App.4th 413, 423; *McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 982.)

### C.    Applying the *Riegel* Express Preemption Analysis

The first step of the *Riegel* express preemption analysis is automatically satisfied, where, as here, the state law claim involves a Class III device that has received premarket approval for commercial distribution.  (*Riegel*, *supra*, 552 U.S. at p. 322.)

The second step of the analysis requires a comparison between the duties the state law claims seek to enforce and the relevant federal requirements.  (See *Quishenberry v. UnitedHealthcare, Inc.*, *supra*, 14 Cal.5th at p. 1072.)  Abbott urges that Regwan's negligence claim is based on common law duties that are " 'different from, or in addition to,' " the federal requirements and that "relate to safety and effectiveness" or any other matter included in a requirement applicable to the device under the MDA.  (See *Riegel*, *supra*, 552 U.S. at p. 322.)  We agree.

Regwan's first amended complaint asserts Abbott breached its duty of care under the negligent undertaking theory.[3]  To

---

[3] The negligent undertaking theory "requires evidence that: (1) the actor undertook, gratuitously or for consideration, to render services to another; (2) the services rendered were of a kind the actor should have recognized as necessary for the

support her claim, Regwan alleges the Abbott representative undertook to render certain services during the implantation procedure. Those services were "to monitor the surgery," to "advise the medical staff as to how much saline should be used," and to "ensure that the correct amount of saline was being used." Regwan further alleges the Abbott representative breached his or her duty of care by not alerting the medical staff that more saline was needed; and, as a result, the saline bag ran dry, causing Regwan to suffer physical harm. For Regwan to prevail, a fact finder would have to determine, in part, that (1) a continuous intravenous flow of saline was necessary for a successful MitraClip implantation procedure; and (2) the Abbott representative assumed the duty to make sure that occurred by telling the medical staff to supply more saline when required.

There is a relevant federal requirement for comparison. In applying for the FDA's premarket approval of the MitraClip, Abbott had to furnish "specimens of the labeling proposed to be used for such device" when it became commercially available. (21 U.S.C. § 360e(c)(1)(F).) As approved, the MitraClip came with numerous labels, including written warnings to medical professionals. One warning concerns the two 1-liter bags of

---

protection of third persons; (3) the actor failed to exercise reasonable care in the performance of the undertaking; (4) the actor's failure to exercise reasonable care resulted in physical harm to the third persons; and (5) *either* (a) the actor's carelessness increased the risk of such harm, or (b) the actor undertook to perform a duty that the other owed to the third persons, or (c) the harm was suffered because either the other or the third persons relied on the actor's undertaking." (*Paz v. State of California* (2000) 22 Cal.4th 550, 559; Rest.2d Torts, § 324A.)

9

Heparinized saline that Abbott instructed were to be used for the implantation procedure. That warning reads: "WARNING: Heparinized saline flush should be continuous throughout the procedure. Ensure flow is visible through the drip chamber and that the tubing is free from kinks and/or obstruction and appropriate pressure of 300 mm Hg is maintained. Discontinuing flush may result in air embolism and/or thrombus formation."

In terms of the second step of the *Riegel* analysis, the FDA-approved warning label not only relates to the safety of the MitraClip but also to "any other matter included in a requirement applicable" to that device—namely, the duty to provide a continuous saline flow for a successful implantation procedure. It is unlike the state law claim, which imposes duties that are "different from, or in addition to" this federal requirement. Liability under Regwan's negligent undertaking theory hinges on whether there were (additional) oral warnings during surgery, whereas under the FDA requirement the written warning label accompanying the device is sufficient. As a result, Abbott could be found negligent under Regwan's state law claim despite having complied with the FDA labeling requirement.

Regwan's argument (unsupported by citation to authority) that her claim is premised on the negligent conduct of an Abbott employee rather than on the safety or effectiveness of the MitraClip would have more traction had there been no applicable federal requirement. (See, e.g., *Medtronic, Inc. v. Malander* (Ind.Ct.App. 2013) 996 N.E.2d 412, 418–419 [negligent interaction during surgery between medical device representative and physician unrelated to FDA's device labeling, design, or manufacturing requirements survived preemption].) The MDA and *Riegel* could not be clearer that federal law expressly

preempts any claim that would allow a fact finder to employ a duty of care different from or in addition to the FDA's requirements.  Regwan's negligence cause of action is preempted.

**DISPOSITION**

The judgment of dismissal against Abbott Laboratories, Inc. is affirmed.  Parties to bear their own costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

11